## CONNECTICUT GENERAL LIFE INS. CO. v. BENEDICT et al. *

### EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. SAME.

Nos. 164, 165.

Circuit Court of Appeals, Second Circuit.

March 1, 1937.

*Writ of certiorari denied 57 S.Ct. 922, 81 L.Ed. —

Kaye, Scholer, Fierman & Hays and Benjamin M. Kaye, all of New York City (Benjamin M. Kaye and Milton Kunen, both of New York City, of counsel), for defendant-appellee and cross-appellant Katharine G. Benedict.

Benjamin P. DeWitt, of New York City (Benjamin P. DeWitt and Sidney Pepper, both of New York City, of counsel), for defendants-appellants and cross-appellees Savings Investment & Trust Company as trustee under trust indenture created by David L. George, and Savings Investment & Trust Company as executor under the will of David L. George, deceased.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

Each of the above plaintiffs filed a bill of interpleader in the District Court alleging that conflicting claims had been made by the defendants Katharine G. Benedict and Savings Investment & Trust Company, as trustee under a trust indenture created by David L. George under date of March 29, 1930, and as executor of the latter's will, to certain insurance policies on the life of George and asking permission to deposit the proceeds of the policies in court, and, upon such deposit, to be discharged from further liability.

The insurance policies issued by the plaintiffs had been taken out by George and were originally made payable to his estate and thereafter were made payable to Savings Investment & Trust Company as trustee of certain trusts set up in the trust indenture executed by George, and in each policy he had reserved the right to change the beneficiary. The conflicting claims of Katharine G. Benedict and Savings Investment & Trust Company arose out of a loan of $44,000 made by Henry Harper Benedict to George. This loan was made on February 25, 1930, upon the note of George which was made payable on January 2, 1934, and contained no provision for the payment of interest. The day after it was made it was indorsed over by Henry Harper Benedict to his wife, the defendant Katharine G. Benedict. On December 20, 1933, George renewed the loan by making a new note in the sum of $44,000 payable to her order on January 2, 1935, in return for which the old note was surrendered marked "paid." The renewal note, like the original, contained no provision for interest.

On January 10, 1934, shortly after the making of the renewal note, George turned over to Mrs. Benedict a $25,000 policy of the plaintiff, Connecticut General Life Insurance Company, and four $5,000 policies of the plaintiff, Equitable Life Assurance Society, the proceeds of which have been deposited in the registry of the court under the order of interpleader to the credit of the two actions. These policies George had withdrawn from Savings Investment & Trust Company as trustee in accordance with the power reserved in the trust indenture he had executed, and he likewise changed the beneficiary in each policy so as to make Mrs. Benedict the beneficiary and shortly thereafter, on February 26, 1934, he executed and delivered assignments of the policies to her without reserving any right of revocation. On December 21, 1934, George made a payment of $22,000 upon the principal of the note, and on January 25, 1935, made a further payment of $3,000 on account of principal and $1,021.28 on account of interest, leaving a balance of $19,000 due on the note in addition to a small amount of interest. He died on April 25, 1935, and Savings Investment & Trust Company was appointed executor of his will. Henry Harper Benedict died in June, 1935.

During the life of Henry Harper Benedict, George paid interest on the original note at the rate of 7 per cent. per annum, which went to the account of Mrs. Benedict. On January 10, 1934, when the insurance policies were turned over to her, George wrote a letter accompanying the policies in which he described them as "covered by my note to you under date Jan. 2d 1935 with interest at seven per cent." All the payments of interest on the loan were at the rate of 7 per cent., except the payment of $1,021.28 which did not correspond with a rate of either seven or 6 per cent. and was probably made because it was inconvenient at the time for George to make a larger payment.

Upon the death of George, Mrs. Benedict demanded payment of the proceeds of the policies upon his life from the insurance companies; the Savings Investment & Trust Company as executor of the will of George notified each insurance company that Mrs. Benedict claimed to hold assignments of the policies but stated that any such assignments would be void by the New York usury laws and requested that no payments under them should be made.

In August, 1935, the Savings Investment & Trust Company as trustee under the trust deed and beneficiary of the policies commenced actions in the New York Supreme Court against the two insurance companies for recovery upon the policies. Thereafter the insurance companies filed bills of interpleader against Mrs. Benedict and Savings Investment & Trust Company as trustee and executor. The defendant Benedict answered claiming the entire proceeds of the policies without stating that they were held merely as collateral for the promissory note, and the Trust Company, as trustee, filed answers in which it asked that the proceeds of the policies be paid to it as beneficiary. It likewise filed answers as executor in which it resisted Mrs. Benedict's claim on the ground that it was founded upon a usurious transaction and asked that such moneys as were not paid to it as trustee be paid to it as executor of the will of George.

The court below found that the loan was usurious, that the usurious interest paid should be credited against the principal of the loan, and that the defendant Benedict should receive from the funds in the registry of the court an amount equal to the balance of the principal of the loan, with legal interest, and that the Trust Company, as the prior beneficiary, should receive the balance of the moneys in the registry. The Trust Company as trustee and as executor has appealed from the decree in so far as it directed the payments of any moneys to the defendant Benedict. The defendant Benedict has taken a cross-appeal in so far as the decree provided that the usurious interest be credited against principal of defendant Benedict's loan.

The Trust Company contends: (1) That the loan made by defendant Benedict and the transfer of the collateral given as security therefor were void for usury; and (2) that as beneficiary under the policies it is entitled to the entire fund in court without being required to pay Mrs. Benedict the amount loaned to George.

In our opinion the court below properly determined that the loan and the giving of security therefor were usurious and that the Trust Company as executor and trustee could raise the question of usury, but erred in holding that it could do so only in the event that it repay to Mrs. Benedict the balance of the usurious loan with legal interest.

■ There can be no doubt that the finding of the trial judge that the transactions were usurious was amply justified by the record. The payments of interest both on the first and on the renewal note were uniformly at the rate of 7 per cent. except the single final item of $1,021.28, and when George transmitted the insurance policies to Mrs. Benedict as collateral he wrote her that they were to secure her "loan * * * with interest at seven per cent." Moreover, there was testimony by Mrs. George that in a telephone conversation between the attorney for the Trust Company and Mrs. Benedict she heard the latter say: "We agreed upon 7 per cent interest on the loan." The attorney confirmed the foregoing testimony by his own to the effect that Mrs. Benedict said to him in the telephone conversation that "the rate of interest that was agreed upon was 7 per cent." He then remarked: "Well Mrs. Benedict, do you appreciate that that might be usury." And she replied: "Well, no. It was not 7 per cent; 6 per cent and 1 per cent bonus." In view of the record we cannot criticise the finding that the transactions were based upon a usurious contract affecting both the original and the renewal note and the giving of the collateral. The question is whether the Trust Company is in position to recover on the policies without repaying the amount of the usurious debt.

■ If the actions by the Trust Company against the insurance companies had gone on without protest on the part of Mrs. Benedict there would have been no defense to a recovery upon the policies. The express provisions of sections 370, 371, and 373 of the General Business Law of the State of New York (Consol.Laws, c. 20) would seem to lead to this conclusion. The first section fixes 6 per cent. as the legal rate of interest; the second forbids any person from receiving any greater rate for the loan of money; and the third provides that if any note shall be taken "or secured" for the loan of money at a higher rate of interest it "shall be void." Curtiss v. Teller, 157 App.Div. 804, 143 N.Y.S. 188; Allerton v. Belden, 49 N.Y. 373, 377, 378. In the present suit the Trust Company is not seeking affirmative equitable relief in that it has not applied for cancellation of the assignments and changes of beneficiary and hence is not bound to do equity and repay the loan in order to recover. Wheelock v. Lee, 64 N.Y. 242, 246, 247. When it asks that there be paid to it the balance of moneys deposited in the registry of the court, after deduction of such sums as may be allowed to the

plaintiff and the fees of the clerk, it is merely defending its title as beneficiary against the conflicting claims of Mrs. Benedict. The interpleader suit is nothing more than a device for protecting the insurance companies from actions at law to recover upon conflicting claims where a double recovery might result. It in no way alters the nature of the claims, which are based on legal causes of action, or essentially changes the actions originally instituted by the Trust Company to recover upon the policies. In Muller v. City of Philadelphia, 208 N.Y. 182, 183, 101 N.E. 762, beneficiaries under a will assigned their interest in an estate as collateral security for usurious loans. It was held that they were not obliged to pay to their assignees the amounts loaned as a condition of obtaining their legacies but could recover their full interest in the estate irrespective of the assignments which they had given as security for usurious loans. Cullen, C. J., said that the beneficiaries sought no equitable relief against their assignees but merely demanded that the executors pay to them the moneys due them from the estate. Similarly it was held in Allerton v. Belden, 49 N.Y. 373, that no right to equitable relief arises in such cases where a defense at law is available. As Rapallo, J., said, at page 377: "The mere fact that a party has made an agreement or given a security which is void for usury, is not, and never was, sufficient to entitle him to apply to a court of equity to have the contract annulled. The right to this relief exists only where from the form of the security the defense cannot be made available at law, or where the instrument sought to be avoided is a cloud upon the title to land, or some other necessity for the interposition of a court of equity is shown."

The decisions of this court in In re L'Hommedieu, 146 F. 708, and In re Fishel, 198 F. 464, are in accord with Muller v. City of Philadelphia, 208 N.Y. 182, 101 N.E. 762. The Circuit Court of Appeals of the Fifth Circuit came to a similar conclusion in Mortgage Securities Corporation v. Levy, 11 F.(2d) 270, in construing the Florida statute of usury. See Vanderveer v. Holcomb, 17 N.J.Eq. 87, affirmed 17 N.J.Eq. 547, to the same effect. The opinion in Halsey v. Winant, 258 N.Y. 512, 180 N.E. 253, in discussing various aspects of the New York usury law does not seem to us to be opposed to the foregoing views. Nor is Brown v. Robinson, 224 N.Y. 301, 307, 120 N.E. 694, 21 A.L.R. 777, opposed, for there affirmative equitable relief by way of cancellation and surrender of usurious assignments was sought and decreed.

The Trust Company here is not a transferee of a cause of action arising out of the usurious loan and transfer of the policies as security, which is obliged to pay the loan before seeking to cancel the assignments and changes of beneficiary in favor of Mrs. Benedict, nor has it applied for such cancellation. Therefore, section 375 of the New York General Business Law does not affect the case. Nor is the Trust Company in the position of a borrower, referred to in section 377, who has begun "an action for the recovery of the money, goods or things in action taken in violation" of the usury statutes. On the contrary, the Trust Company is a party having legal title to life insurance policies the transfers of which to Mrs. Benedict were tainted with usury and were void and might be ignored as soon as their usurious character appeared.

We cannot accede to the contention that the Trust Company was obliged to go into equity and obtain the cancellation of the assignments and changes of beneficiary in order to recover. It did not have to produce the policies for they were already in the hands of the insurance companies. Nor did it have to obtain cancellation of instruments which were taken to obtain security for usurious agreements and were void at law. Likewise we can see no merit in the contention that the Trust Company is not in a position to raise the question of usury. If the change of beneficiary was to furnish usurious security it could be treated as void by the Trust Company as a prior beneficiary. Elliott v. United States (D.C.) 271 F. 1001; Smith v. Boston & Maine R. R. Relief Ass'n, 168 Mass. 213, 46 N.E. 626; Supreme Council Catholic Benevolent Legion v. McGinness, 59 Ohio St. 531, 53 N.E. 54; Pettus v. Hendricks, 113 Va. 326, 74 S.E. 191; 7 Cooley's Briefs on Insurance, 6471.

Decree reversed so far as it directs the payment of any moneys to Mrs. Benedict, and modified so as to direct payment to Savings Investment & Trust Company as trustee of the funds in the registry of the court in both actions, with costs against Mrs. Benedict.